The people have appealed from an order entered in the circuit court suppressing evidence in defendants' solicitation of murder for higher cases. The defendant had filed a motion in his case to suppress evidence obtained by use of a wire recording of his cellmate. The chronology of the case is important. The testimony at the evidentiary hearing showed that around the 13th or 14th of May, Assistant State's Attorney Mike Knick was informed by the Will County authorities that an inmate had reported to them that another inmate was seeking to harm witnesses in his case. Assistant State's Attorney looked at the case, ascertained who the parties were, looked it up. The person who wanted to give the information was Franklin Bryant. He ascertained that he was represented by Attorney Anthony Tomkowitz. And the person who was soliciting the murder for higher was Christian Shepherd, and he ascertained that in the case in which Mr. Shepherd was an inmate, he was represented by the public defender's office. Therefore, the Assistant State's Attorney called Attorney Tomkowitz to inform him that his client, Franklin Bryant, wanted to wear a wire and to obtain evidence in the case. Mr. Tomkowitz came down to talk to Mr. Knick that afternoon. And again, Mr. Knick explained what had happened and that his client, Franklin Bryant, had gone to the Will County authorities, had given them information, had given them a map that the cellmate, the defendant, had given him and some other information and had told the authorities that he was willing to wear a wire to record his conversations with the inmate. At that point, or whatever point in the conversation that Mr. Bryant's cellmate's name was given, Attorney Tomkowitz recognized the name and said, Mr. Shepherd, I had two client consultations with him at the Will County Adult Detention Facility's videoconferencing and talked about hiring me as his attorney. And I will, as soon as I leave here today, I will call the family and tell them not to bring the retainer, that I will not be representing him. The other discussion was that Mr. Tomkowitz said that he planned to have an emergency hearing the following day on a motion for furlough for Mr. Bryant to be released for 24 hours to visit his dying mother and the parties agreed that the state would not object to the furlough and that that would provide a convenient time for Mr. Bryant to be released 24 hours later to come back into the jail to be wired up out of the presence of the general population and then to wear a wire in the conversation with the defendant. That is what occurred the next morning. Apparently Mr. Tomkowitz had a brief consultation with his client, Mr. Bryant, with regard to the furlough hearing. Mr. Tomkowitz was not present at the overheard hearing and events unfolded as they did. What was the actual ethical violation? There was no ethical violation. The alleged ethical violation was the fact that because Mr. Sheppard was a prospective client, without detailing or without even proving that any information was conveyed, there are certain ethical obligations on duties to prospective clients. One of them is not to reveal any information that is obtained during the consultations and another is not to represent a party whose interests might be adverse to the party, to your prospective client. But aren't the allegations, the allegations appear to be all speculation and conjecture? That's correct. That's correct because the defendant did not present any evidence that any information was tendered and certainly not that any significantly harmful information to him in his original sexual assault case was tendered during the conversations with visitors. So the reason I'm asking this question is because I'm trying to understand that the defense argument is that they didn't have to show anything because they would not have to present any confidential information to the court. So therefore I guess they could just speculate and say there was a potential ethical violation if this X happened or Y happened or Z happened. That's correct. That was the defendant's position. The people's position below and on appeal is that the defendant, as the proponent in the motion to express, had the burden to state that information was disclosed. He didn't even state that any information was disclosed. The defendant never took the stand. Is there an issue of appearance here, like an appearance of a conflict? Is there an appearance? No, I don't believe there is an appearance of a conflict. As soon as Mr. Tompkins became aware that the person for whom they were seeking the overhear was somebody who he had consulted, he said I immediately will contact those parents, tell them not to send the retainer down. He never filed an appearance. He was never a record attorney for Mr. Shepard. No, I don't believe so because he consulted with him about, and if you look at, again, no one called Mr. Tompkins as a witness. The defendant had subpoenaed him, had successfully argued against Mr. Tompkins' motion to parse the subpoena, opted not to call him as a witness. The people don't have the burden in a motion to express, so they didn't call him as a witness, but his affidavit that he presented to the court as part of his motion to quash is contained in the record. The people have referred to it in their brief, and in that affidavit, he said, here's what we discussed. The charges that he was facing, the sentence for those charges, my fees, my law firm's experience, etc. I specifically told the defendant, as I tell all my clients, do not discuss the facts of this case on the video chat that we're having now. This is not a secure place. That's what he said. He said, I did not discuss the facts of the unbelonging sexual assault case at either of those two client conferences. I was just going to ask you this relative to that. Attorney Tompkins, in the affidavit, said, I tell these people, don't have a conversation. And the defendant agreed to that, and that they did not discuss the facts of the case. And he's in a room where it's taped. Yes, that's correct. And it's a video conferencing room, yes. Video conferencing room. And he says it's not private, so he did not want to, and the defendant agreed not to discuss the facts of the case. Now, there's a difference between the rule of conduct of 1.9 versus 1.18. In 1.9, there's some assumptions that are made, but this is a 1.18. That's correct. Although there's an argument now in appeal, but below it was argued a potential client. That's correct. Perspective. And that's what the defendant averred, not averred, it was not a verified pleading. But in the pleading, the defendant characterized himself as a prospective client of Mr. Tomkiewicz and averred that there had been a violation of ethical rule 1.18. That's what was alleged, that's what the parties argued, that's what the judge found. Nobody ever mentioned 1.9, 1.7, former client, actual client. Those were not raised below at all. And as the people argued in their reply, they should not be considered by this court. The record was not developed with that. The defendant was contending below that it was a violation of 1.18, and he characterized himself in the pleadings as a prospective client. You know, with regard to the trying to figure out what is the showing that a defendant has to make in a 1.18 situation, the rule, specifically C, says a lawyer subject to Paragraph B shall not represent a client with interests materially adverse to those in the same or substantially related matter if the lawyer received information. That's actually receiving information. That's correct. From the prospective client that could be significantly harmful to the person of the matter, except as provided in Paragraph D. If the lawyer is disqualified, no lawyer in the firm, you know. Correct. But that's talking about not speculative information. It's talking about information. That's true. And there's another point that the defendant has to prove in that subsection C, which is that it was substantially the same or a related matter. And again, he was consulted with regard to the sexual assault case. These allegations didn't exist at the time of their consultations. The charge didn't exist. To the extent that there might have been a problem with regard to the sexual assault case, the trial judge ruled in the first hearing that he would suppress the use of the wire recording in the sexual assault case. The people did not appeal that ruling. What we're at here is the use of the recorded conversation in the solicitation of murder for hire case. And that, the people say, is not substantially related to the state. It's not substantially the same matter as the one in which the defendant had. What we're really talking about is what the rule talks about is disqualifying information. Yes. And that was the state's contention below, was the defendant had the burden to put forth some information and did not. The defendant took the position that he had no duty to put forth any information, and the trial judge accepted that below. And so he put forth no information. And to follow up on Justice Litton's question, you know, sometimes courts in these areas look at the appearance of impropriety. How would that relate to this question about disqualifying information? Is there an appearance of that? If the appearance of disqualifying information was the problem, I think that the fact that he talked to him might be enough. We wouldn't need the rule with the requirements of what the defendant has to show or what a party has to show to show an ethical violation. If the fact that he had talked to him on a prior occasion and also represented Bryant is enough to find an ethical violation, we wouldn't have those requirements in the rule. It's the fact that Mr. Shepard was looking for counsel other than the public defender meant he interviewed perhaps more than one. And ultimately, Mr. Retz took the case a month later. It doesn't mean that anyone he talks to, unless you can show that the confidential information was revealed, and in this situation, if he represents a party that may have an adverse interest that was significantly harmful to the matter with which the defendant had consulted Mr. Tomkowitz, then there would be a violation. Neither element has been shown here. And just the fact that he had spoken with him is not enough. That's not the appearance of impropriety. There is a duty to show some acquisition and use of confidential information, which is significantly harmful in the consulted case. Those elements were not shown. Are there any other questions? No. In that case, I would like to make a brief for the balance of our argument and reserve any right to rebuttal. Thank you. Thank you. Mr. Verrill. Good afternoon, Your Honors. Good afternoon. My name is Steve Verrill. I'm with the Office of the State Appellate Defender for Christian Shepherd Defendant Appellate. In this case, we've argued that there's a violation of Rule 1.7 and Rule 1.9 based on a concurrent conflict of interest on appeal. That wasn't argued below, was it, the 1.9? That was essentially not argued below. There was one reference to it in one of the state's pleadings. They mentioned that Rule 1.9 did not apply. That's the record C-120, Paragraph 7, one of the state's pleadings. However, it is the case that the defendant did not allege that there was a concurrent conflict of interest. But the record does reflect that, and we're asking this Court to affirm on that basis based on Johnson, which has held that this Court can't affirm the trial court's judgment on any basis that appears in the record. And in this case, it is clear from the information in the record that there was a full attorney-client relationship. The testimony of Assistant State's Attorney Nick was that Tom Kwitz had two meetings with Shepherd on sexual assault charges at the jail. Shepherd told him that he wanted to hire Tom Kwitz. Tom Kwitz said, after Nick realized that there was going to be this conflict problem potentially, Tom Kwitz said, I'm not going to file an appearance in that case, then. And he said, immediately after I leave here, I'm going to contact the family and tell them that I'm not going to bring in the money, the retainer money. Now, what I'm going to give in my brief is that in order to have a full attorney-client relationship, according to the Illinois Rules of Professional Conduct and the case law, what you need is a manifestation of assent on the part of both the lawyer and the client. Here, the client gave his assent by saying that he wanted to hire him and make the arrangements to deliver the retainer. The only thing that didn't happen here was that the retainer was not actually physically delivered. Well, I said in case law, King v. King and Herbie v. Graham, which says they do not need to have money charged or paid in order to have an attorney-client relationship. The fact is, the judge, in fact, had to determine what the relationship was here in order to make a ruling on the prospective client issue. And the judge did make a factual finding that this had gone beyond a mere jail visit and that, in fact, the retainer was about to be delivered by the family to the lawyer. And the acceptance of that, presumably, I guess, would be evidence of assent on the part of Mr. Tom Kwitz. You don't have any evidence that you have Mr. Shepard's assent to the relationship, but what was lacking was the actual payment of the retainer. So, I mean, what evidence do you have of Mr. Tom Kwitz's assent, his agreement? His assent is shown by the fact that he was going to accept this retainer. He would not have told Shepard, okay, well, bring me the retainer and then I'll decide if I'm going to represent you at that point. He wouldn't have had to call the family and tell them, we need to terminate this relationship. We can't accept you as a client. We need to decline the representation. And he wouldn't have needed to do it immediately if he hadn't already agreed to accept the retainer and do the representation. I mean, if he didn't bring the money, would you, under that same scenario, still expect Mr. Tom Kwitz to file the appearance? Well, he said he was going to file the appearance, and the money was basically on the way. He had to call the family and tell them not to bring the money. I mean, that really suggests that he needed to terminate the relationship. I mean, if there was a relationship, then he wouldn't need to call them. He would just say, okay, well, if they come in with the money, I'll tell them I'm not going to represent them. Well, I guess perhaps it's a matter of courtesy saying, don't even bother to come to the office. I can't represent him. You know, I guess that perhaps was the basis maybe for his statement. But you don't have any, I mean, he said the evidence is clear in the record. I don't know what evidence do you have that there was, I mean, there's no entry of an appearance. There's no retainer fee that's been delivered. Nothing, a signed agreement. Nothing that indicates that it has been a completed arrangement. But that's what I'm arguing is not necessary. The case law essentially shows that you do not need to have money delivered. You just need to have some sort of consent. And there are even cases where they found that you don't need the attorney's consent to establish a relationship. And that's because the rules are made to protect clients in these situations. When you've got a client who's at the point where he's bringing in the retainer money practically, that's a situation where it's been contemplated that clients are going to be harmed if they're in a situation where they're assuming basically that they fire this attorney. I mean, I would agree with you that there are circumstances where you can say you don't have to even show that, you know, that money was delivered. But you have to somehow show that and you have to have some sort of evidence other than a, you know, I guess pure conjecture. I mean, you don't have Mr. Shepard's testimony and certainly the affidavit of Mr. Tomkowitz says otherwise. So I guess I don't know based on what that you're saying that there was already an attorney-client relationship other than the testimony of the state's assistant state's attorney who I don't know if that would be enough to establish it. Okay, well, our position is that it is enough when you have someone indicating that they're going to accept a retainer. I think that under the rules that that would be enough. If it's not, we have two alternative basis. I tell you, if it is, a lot of insurance companies are going to want to increase their malpractice coverage prices for lawyers. Because if that's all you need to, if you don't need very much to say that you're stuck representing the person, a lot of people are on the hook when they just had a preliminary meeting with a client and a suggestion that they might take the case. But they're still doing, they find something out before they do anything, before they accept it. I mean, this is what you're suggesting is a very major deviation from normal practices. I mean, I know there are cases out there where people have undertaken, they've done things. And so that's why they're saying you were representing the person. There's evidence that they present about things that have gone on. But this is not very much saying that all of a sudden this is actual representation. Aside from the fact it wasn't argued below. I mean, this would be a major shift in when a lawyer is representing someone. I don't think so, because I've cited a case in Great Marriage of Newton, where there was an attorney-client relationship that was found to be formed just based on a consultation. Are we perhaps confusing an attorney-client relationship with the language prospective client in 1.18? I mean, there are duties established for prospective clients, and that may cover the arguments you're making, but you may be taking yet another step beyond 1.18. Yes, if there's just a discussion about forming a potential client relationship, then that falls under the Rule 1.18. We're arguing that there's more than that here, but we've also argued that 1.18 would be the basis for an ethical violation. And that's based on the argument that the rules, and Rule 1.9 specifically says that in order to have a conflict of interest, a former client conflict of interest, imputed onto an entire law firm from an individual lawyer, there needs to be a showing that there was confidential information material to the matter at hand given to the lawyer. But a comment to that rule states that that information need not be shown, revealed, in order to prove that there was that conflict of interest that's imputed onto the parties. So that rule clearly says that you need to show that there's confidential information that's material to the matter, but you need not reveal that to make that showing. That showing is based on the fact that an ordinary consultation of that nature would result in that kind of information being given to the lawyer. Again, it goes to what evidence of that do you have? You have an affidavit that says, I tell my clients, this isn't a secure setting. Don't talk about the facts. Don't give me your confidential information. What I get is what's a public record, the fact that you've been charged with this. I'm going to tell you if you want to plead it out, it's going to cost this. You want to go to trial, it's going to cost this. This is the type of cases that these are. But he doesn't refute. He doesn't say anything. He just says, well, no, if you're charged with a crime and an attorney comes and meets with you twice, obviously they've told you something confidential. And I don't see where you have any evidence other than that they've met twice. I mean, I... Well, the affidavit was never submitted to evidence, and those statements were not tested by a cross-examination, and the trial doesn't have an opportunity to make credibility determinations on that. So we've asked that that not be considered in this case. But as to the full attorney-client relationship, if a fee has been set and it's about to be delivered, that might suggest that. I mean, it wasn't just here are the fees for this case and here's the fees for this case. It was a specific fee that obviously was going to be delivered. That kind of suggests that there could be a full relationship. Let me go back to this. What was the confidential information? Your reference is 1.9, right, which there's almost an assumption or presumption when you're representing someone that there's material information that you received. How do you apply that kind of concept as in 1.9 to 1.18? Well, that is for 1.9b, which is an imputation to the law firm. You don't need to – there is a presumption. You don't need to show that there wasn't any confidential information under Rule 1.9a dealing with formal clients. When you're imputing that to the law firm, the other people, that's when you need to make that showing. But our argument is that there are strong policy reasons that that confidential information does not have to be revealed. And those apply to 1.8. We're talking about significantly harmful information, just as much as they do apply to – that's why in the rules they don't require disclosure of the confidential information because obviously that's something that the client is concerned about. So under your position, under the prospective client rules under 1.1.8, okay, you're suggesting that all you have to say is there was a meeting and we can assume everything after that? No. We assume there was this important information, material information, that was garnered? No, not necessarily. I mean, in this case it was obviously a meeting concerning particular charges. We're talking about sexual assault charges that were – it was a pending case against this guy while he was in jail. And we think that – also we point out that the trial judge implicitly had to find that significantly harmful information was disclosed. And what was the basis for that finding? Where did that come from in the record? Well, it would have to be based on the logical inferences that were – Are those just stating inferences or are they more speculation? I mean, they had the meeting and therefore these things exist. But I think that's the standard is that in an ordinary consultation of that nature, significantly harmful information, information that could be significantly harmful to the client, would ordinarily be learned by the lawyer in that sort of consultation. Do defense lawyers normally get confidential information in the jail where it's being recorded? Well, again, that's not evidence. We don't know from Assistant State's Attorney Nick's testimony that they were recorded conversations. That's all from information that's not evidence. So we're asking the court not to consider that. And in an ordinary consultation with the client in jail twice for, I think, affidavit reversed to, I think, 40 minutes or something like that per time, I think, yeah, ordinarily the lawyer would try to investigate and learn what kinds of information that involves learning about both exculpatory evidence and potential inculpatory evidence. And evidence that would suggest that a client was guilty in a sexual assault case would also be evidence that would be implicating in a plot to murder witnesses in that same case because that charge is something that is very closely connected. It could be evidence of both. So if a person is guilty, would be guilty of sexual assault, then that would give them a motive to eliminate witnesses in that case. Well, let me back up for a second. Who has the burden here to show this? The defendant does have the burden to introduce some evidence here, but I think that... So to meet that burden, what did the defendant do in this case? Said they had two meetings and there was a retainer that was talked about. Yeah, in this case we have the two jailhouse meetings concerning particular charges We know they have two meetings. Okay, what do we know that went on in the meetings? Actually went on in the meetings. We're not considering the affidavit by the attorney about what went on. So what do we know went on besides having the meeting? What we know is that we've got consultation regarding criminal charges in these two meetings. And that's because he was charged with something? Sexual assault, yes. So from that, I think the judge could infer that inculpatory information was gained by the lawyer, that he would inquire about the facts of the case and he'd learn this kind of information. So the judge would assume that. So our argument here is that it wasn't manifestly erroneous for, based on the fact that... because all it needs to be shown is that in ordinary consultation, the lawyer would learn some really harmful information. If that's the case, then the judge can look at the nature of this consultation, which is what the comment suggests, and conclude that it's simply harmful information. So if we're violating prospective client 118, all you need is showing that there was a meeting, nothing, we don't know anything that happened at the meeting, there was a meeting with a defendant who was charged with something. And then from there, you make findings of fact based on what you would gather normally would be discussed at these meetings? The question I guess is whether the judge's ruling is manifestly erroneous, and I don't think it was, where we had the nature of the consultation, the judge can make inferences about what would ordinarily be disclosed in that consultation. We've also argued that there's a due process violation here. Now, in this case, what's happened is that Bryant was called to... Bryant filled out a form to talk to a police officer. Nick, on that form, Bryant wrote down Tom Quits' contact information, and Assistant State's Attorney Nick called that number and got a hold of Tom Quits, and Tom Quits came in. At that point, Tom Quits informed of the nature of this relationship with Shepard, and after learning that, the State's Attorney went ahead with that same attorney and made a deal for a furlough. Evidence suggests there was more than a furlough, the Assistant State's Attorney said. There may have been additional consideration. We've got a case where the guy was charged with... It was convicted of possession of a weapon by a felon. Sentencing was pending on that case, and that he was out on bond during that, and at that time he committed the second felony, and he still remained out on bond on that according to the Assistant State's Attorney Nick's testimony. So there was more than that, the record reflects. So they make this deal for a furlough. They make a plan to go ahead and deceive Shepard. This is all before he called the family and told them not to bring a retainer. Then the Assistant State's Attorney got him to go and see if Bryant was on board the next day before he got the application for a wire. And so there's a lot of involvement by the State's Attorney involved. This attorney, who he knew, had consulted with Shepard and basically had an attorney-client relationship, all but having to check actually having arrived there. And they went through with that. Nick kept it quiet for three years until he finally talked about it. The court found there was a false pleading filed in court because of the fact that he didn't bring this out later. So you've got this experienced judge, Vermilla, former State's Attorney, and he's shocked at this. He thinks that this is not appropriate for a State's Attorney to get involved in a situation. So the State's Attorney took advantage of this ethical violation, and this really rises to a due process violation, even if it doesn't fall under either of the other two ethical rules, because it's extremely important that the attorney-client relationship be protected here. If this is not a due process violation, that means that people aren't going to feel comfortable consulting with their attorneys at this point because somebody could just go join the State and give them this information, and the client's not going to know whether they did that or not necessarily. They may be not going to be able to prove it, and it's going to discourage people from consulting with their lawyers, essentially, which is the relationship of trust is essential between an attorney-client and our adversary system, so that the harm of this would be great. So we would ask that this court find a due process violation and suppress evidence based on that, even if the other ethical rules that we've cited. I'm trying to get my head wrapped around this, but the judge also found that there was incriminating information gained by the State due to the ethical lapse. What specifically was that? That was the wire recording. So the finding was that the State's attorney involved this attorney who had these consultations was 90% of the way to forming a full attorney-client relationship because it's just a matter of the retainer being received, and that would be it. And the judge found that that was an ethical violation that the State took advantage of. And obviously the false pleading is its own issue of misconduct. And that's misconduct against? Well, that was misconduct in this particular case because the pleading was... Who did the misconduct in that situation? Well, that was the State. It was in response to the motion to dismiss that the pleading was filed suggesting that the only way they could have known about these consultations would be to check all the jail records or something like that, when in fact later the Assistant Tate's attorney disclosed that he in fact did know about the consultations between Shepard and Tomquist before he got Tomquist involved on this deal for the furlough where they directly got information through that deal to use against Shepard. Let's see if my time is up. If there are no additional questions, I'd ask the Court to adjourn. Thank you, Mr. Vero. Ms. Kelly? Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued to you as soon as possible. And right now we will stand at recess for a panel session.